UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERZY KRASOWSKI, | ) |
| Plaintiff, | ) Case No. 11 C 0596 |
| v. | ) Magistrate Judge Sidney I. Schenkier |
| MICHAEL ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

In this social security appeal, Jerzy Krasowski moves for summary judgment or remand of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") and Supplement Security Income ("SSI") (doc. # 22: Pl.'s Mot.). Mr. Krasowski's DIB and SSI application was denied initially and upon reconsideration (R. 39-42). After a brief hearing before Administrative Law Judge ("ALJ") Arthur S. Cahn, on February 24, 2010, the ALJ issued a written decision denying Mr. Krasowski's application for SSI and DIB (R. 26). The appeals council denied review (R. 5), and Mr. Krasowski timely filed this motion. For the reasons set forth below, we grant Mr. Krasowski's motion for remand.

### I.

Mr. Krasowski was born on May 4, 1952, making him 53 years old at the time of his alleged disability onset date of February 3, 2006 (R. 138). He is approximately six feet tall, and weighs about 200 pounds (R. 33-34). Mr. Krasowski completed his high school education in Poland, and testified at the hearing that "[w]riting English, not too good. . .[s]peak okay." (R. 34). He worked

---

[1]On May 5, 2011, by consent of the parties (doc. # 10) and in accordance with 28 U.S.C. § 636(c), this matter was referred to this Court for all further proceedings, including the entry of final judgment (doc. # 12).

as a machine operator, making machine parts, from 1992 until his alleged disability onset date (R. 143). Mr. Krasowski's job required him to walk and stand four hours each day and handle, grab, or grasp large objects for five hours each day (*Id.*). At his job, Mr. Krasowski frequently lifted 50 pounds or more, the heaviest weight being 100 pounds or more (*Id.*). He used a crane to help him lift things (*Id.*).

**A.**

On November 29, 2005, Mr. Krasowski was at work when the handle on an unspecified machine he was operating auto-rotated and struck his left knee about twenty times, causing him severe swelling and pain (R. 180). X-rays were normal (*Id.*), but an MRI taken on December 21, 2005, indicated marked degeneration and a tear in the medial meniscus (cartilage) of the left knee as well as extensive bone bruising and an increased build-up of fluid in the knee (R. 218). On December 28, 2005, his doctor recommended therapy and follow-up in two weeks (R. 180).

At his follow-up visit on January 11, 2006, Mr. Krasowski showed no improvement from the therapy; rather, the examination revealed continued swelling, tenderness, and pain (R. 180). Knee surgery was scheduled, and on February 3, 2006, Dr. Victor Romano performed left knee arthroscopy and removed the torn portions of the meniscus in Mr. Krasowski's left knee (R. 215).

Mr. Krasowski received post-surgery follow-up treatment from Trinity Orthopaedics ("Trinity") (Dr. Romano's practice group), a physical therapist (unnamed), and a licensed chiropractor, Dr. Jaroslaw Slusarenko. Progress notes from Trinity on February 16 and March 9, 2006, stated that Mr. Krasowski's level of pain had decreased, but he was stiff, limping, and walking with a cane, and he had restricted range of motion (R. 181). During this same period, from February 6, 2006, to March 8, 2006, Mr. Krasowski received physical therapy several times a week. His

2

physical therapist noted that Mr. Krasowski was slowly improving and progressing "as anticipated," but that he continued to have pain, weakness, fluid build-up, and swelling (R. 206-09).

On March 13, 2006, the physical therapist noted that Mr. Krasowski had better and worse days, but his functional capacity and strength remained less than optimal (R. 209). Throughout March 2006, Mr. Krasowski continued to experience nagging and throbbing pain and tenderness, which was aggravated to sharp stabbing pain when he bent his knee or walked (R. 210). On March 24, 2006, Mr. Krasowski's knee gave out, causing him to fall and injure his left hip, and resulting in pain and inflammation (*Id.*). Dr. Slusarenko prescribed bed rest, ice, elevation, physiotherapy, Transcutaneous Electro Neural Stimulation ("TENS"), and rehabilitation exercises to address Mr. Krasowski's pain and to facilitate recovery (R. 202).

At his next visit to Trinity on April 6, 2006, the orthopedist noted Mr. Krasowski's fall, and opined that Mr. Krasowski may have reinjured his left knee (R. 182). The office ordered an MRI to rule out a tear in his ACL (the anterior cruciate ligament in the knee) (*Id.*). The MRI showed no ACL tear, but indicated some abnormality (*Id.*) On April 30, 2006, Dr. Slusarenko noted that Mr. Krasowski had improved since March, but that he had suffered a setback more than a week prior, when his knee almost collapsed due to "intensified knee pain" that arose while he was performing his at-home rehabilitation exercises (R. 203).

On May 4, 2006, Dr. Romano noted no new injury to Mr. Krasowski's left knee (R. 182). He opined that Mr. Krasowski's knee instability was related to atrophy in the quadriceps muscles on his left side (*Id.*). Mr. Krasowski had full range of motion in his knee, but Dr. Romano noted that the Lachman test (an examination measuring ACL injury by putting upward force on the knee) was positive, and the most recent MRI showed some changes due to Mr. Krasowski's old meniscus tear

3

(*Id.*). Mr. Krasowski also had continued pain and tenderness in the knee joint (*Id.*). Thus, Dr. Romano planned to order a KT1000 exam to assess the ACL instability, and he ordered continued therapy and a brace for Mr. Krasowski's quadriceps atrophy (*Id.*). Dr. Romano ordered Mr. Krasowski to be off work for one more month and then to return to a sedentary job afterward (R. 182). Dr. Romano opined that Mr. Krasowski's "MMI", or maximum medical improvement, would be six to eight months after surgery (*Id.*).

On June 1, 2006, Dr. Romano noted that Mr. Krasowski had persistent pain and giving out of the left knee (R. 182). Dr. Romano recommended proceeding with the KT1000 test, and if positive, doing ACL reconstruction and allograft (tissue graft), and continuing with physical therapy (*Id.*). In the KT1000 test, the physician applies similar upward force on the knee as the Lachman test, while an instrument is attached to measure knee joint displacement in millimeters.[2] On June 13, 2006, Dr. Romano performed the KT1000, which was positive for an ACL tear in Mr. Krasowski's left knee (R. 183). Dr. Romano recommended surgery to repair the ACL tear, but his notes from July 2006 reveal that the surgery was not approved by Mr. Krasowski's worker's compensation insurance (*Id.*).

The record indicates only two further dates of treatment. On July 20, 2006, Mr. Krasowski visited Dr. Slusarenko, who noted that Mr. Krasowski was still experiencing left knee pain, and that he "may require another surgery," but on the positive side, his left leg muscles were "regaining strength because of his therapy protocol" (R. 205). Next, on August 31, 2006, Mr. Krasowski followed up with Dr. Romano's office "for his left knee ACL tear" (R. 183). His left knee was

---

[2]*See* S. Arneja & J Leith, *Review Article: Validity of the KT-1000 Knee Ligament Arthrometer*, 77 J. Orthopedic Surgery 77 (2009).

4

continuing to give way and cause him pain, and Mr. Krasowski limped and used a cane to walk (*Id.*). Dr. Romano stated that the plan was for Mr. Krasowski to continue with therapy and proceed with left knee ACL reconstruction when approved by his worker's compensation insurance (*Id.*). Dr. Romano stated that Mr. Krasowski was to remain off work until his surgery (*Id.*).

### B.

Mr. Krasowski was first interviewed by SSA on the day he filed for disability, November 5, 2007 (R. 138). The interviewer observed that Mr. Krasowski had difficulty walking and needed a cane to help him walk (R. 139).

On February 6, 2008, Disability Determination Services ("DDS") conducted a radiological evaluation of Mr. Krasowski's left knee (R. 190). The X-ray revealed mild degenerative arthropathy (disease or abnormality) (*Id.*). That same day, DDS physician Dr. Mahesh Shah examined Mr. Krasowski for approximately 30 minutes and reviewed his medical information (R. 186). Dr. Shah observed that Mr. Krasowski walked into the office with a slight limp on the left side, holding a cane (R. 187). Mr. Krasowski reported that he was on crutches for approximately 6 months post-surgery (*Id.*). Although he does not require a cane to ambulate, he still uses a cane when the pain in his knee is worse (R. 186). Mr. Krasowski reported that he continued to have swelling and pain in his left knee, which he treated with Tylenol rather than prescription medication, which gave him heartburn (R. 186). Dr. Shah's examination of Mr. Krasowski's left knee showed a well-healed surgical scar, no swelling, and no deformity, with mild tenderness and fairly good range of motion (R. 188). Mr. Krasowski was able to squat as well as heel walk, toe walk and ambulate without assistance (*Id.*).

Mr. Krasowski also complained of pain in his right ankle due to an injury that had required surgery in 1996 and 2002 (R. 187). Dr. Shah observed a well-healed surgical scar on the right ankle,

5

with mild swelling and tenderness, but fairly good range of motion (R. 188).

On March 4, 2008, SSA medical consultant Dr. Charles Kenney completed a Residual Functional Capacity ("RFC") Assessment for Mr. Krasowski (R. 191). Dr. Kenney described Mr. Krasowski's primary diagnosis as "mild degenerative arthropoathy [sic] L knee," and stated that no postural, environmental, or other limitations were established (R. 191, 193-95). Dr. Kenney determined that Mr. Krasowski could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about six hours in an eight-hour workday, and push and/or pull for an unlimited time frame (R. 192). A vocational assessment was completed based on this RFC, finding that Mr. Krasowski was limited to medium work activity, and that even with additional postural and environmental restrictions, the majority of jobs at the medium exertional level would be possible (R. 147).

On May 22, 2008, SSA medical consultant Dr. Francis Vincent reviewed Dr. Kenney's RFC determination and all the evidence in the file, and affirmed the RFC determination (R. 200). Dr. Vincent revised Dr. Kenney's prior decision to add that Mr. Krasowski did not allege any worsening of his existing impairment or any new impairment, but that Mr. Krasowski was credible because the medical evidence from 2004 to 2006 showed a history of significant problems (R. 201).

### C.

On January 25, 2010, the ALJ conducted a six-minute hearing by video conference (R. 32). Mr. Krasowski testified that he was laid off from his job one year after his injury because his employer would no longer keep him on light duty (R. 35). He stated that because of the November 2005 accident he can no longer stand up and work on a machine as he did before (*Id.*). He has trouble working through the pain in his knee, which is sometimes less, sometimes more (*Id.*). Mr.

Krasowski testified that he had crutches for almost one year after his surgery and that he still relies on his cane -- provided to him by his doctor -- to help him walk (*Id.*). No other individuals testified at the hearing.

### D.

The ALJ issued a written decision on February 24, 2010, finding Mr. Krasowski capable of performing medium level work, and therefore not disabled under Section 1614(a)(3)(A) of the Social Security Act (R. 26). The ALJ applied the five-step sequential analysis required by 20 C.F.R. § 404.1520(a)(4). Initially, the ALJ determined that Mr. Krasowski's last insured date was December 31, 2011, and that Mr. Krasowski had not engaged in substantial gainful activity since his alleged disability onset date of February 3, 2006 (R. 20).

At Step 2, the ALJ determined that Mr. Krasowski's left knee injury, status post-surgery and left knee and right ankle pain constituted severe impairments (R. 20). At this step, the ALJ detailed the DDS findings and Mr. Krasowski's medical records, but his discussion of the medical records did not extend beyond May 2006, and thus did not include the results of the KT1000 exam (R. 20-22). As of May 2006, the ALJ noted that Dr. Romano opined that Mr. Krasowski's recovery period was estimated between 6 to 8 months after surgery, if at all (R. 21).

At Step 3, the ALJ concluded that Mr. Krasowski's severe impairments did not meet or medically equal a listed impairment (R. 23). Specifically, the ALJ found that the "medical evidence does not show an inability to ambulate effectively under Section 1.03" (*Id.*). The ALJ then performed an RFC analysis, finding that Mr. Krasowski has the RFC "to perform the full range of medium work, *i.e.*, lift and carry 50 pounds occasionally and 25 pounds frequently, stand, walk and sit about 6 hours in an 8-hour workday with unlimited pushing and pulling, as defined in 20 C.F.R.

404.1567(c) and 416.967(c)" (*Id.*). Alternatively, the ALJ found that Mr. Krasowski's impairment had not lasted for a continuous period of at least 12 months (R. 24).

In making this determination, the ALJ found that while Mr. Krasowski's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" his RFC (R. 24). The ALJ questioned Mr. Krasowski's allegations that he is in "constant pain, his left knee is regularly swollen and sore and he cannot lift, stand or walk for long periods of time," in light of the DDS examiner's findings and Mr. Krasowski's medical records through May 2006 (R. 23-24). The ALJ stated that treating records from Dr. Romano and Dr. Slusarenko indicated that Mr. Krasowski's condition has improved with the treatment they had prescribed (R. 24). The ALJ also found that Mr. Krasowski has not been prescribed any pain medications (*Id.*). The ALJ stated that he gave significant weight to treating source records as well as state agency medical consultant's opinions (*Id.*).

At Step 4, the ALJ found that Mr. Krasowski could not perform his past relevant work as a machine operator (R. 24). The ALJ did not state what level of exertion the position of machine operator required (*Id.*). At Step 5, the ALJ concluded that based on Mr. Krasowski's RFC, age, education, and work experience, jobs existed in significant numbers in the national economy that he could perform (R. 25). The ALJ did not specify which jobs were available (*Id.*). Rather, the ALJ determined that Mr. Krasowski could perform substantially all the demands of medium level work, and thus he was not disabled, and transferability of job skills was not material (*Id.*).

## II.

We begin our analysis with a discussion of the governing legal standards. To receive DIB

and SSI, a claimant must show that he has a disability, defined in the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must ask whether: (1) the claimant has performed any substantial gainful activity since the alleged onset date of disability; (2) his impairment or combination of impairments is severe; (3) his impairment or combination of impairments meets or equals a condition listed in the regulations; (4) his RFC prevents him from performing past relevant work; and (5) his RFC prevents him from performing any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4). In this sequential analysis, the claimant must receive an affirmative answer at either Step 3 or 5 to qualify as disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The burden rests with the claimant in Steps 1 through 4, then shifts to the Commissioner in Step 5. 20 C.F.R. §§ 404.1520(g); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

Judicial review of an ALJ's decision is limited to determining whether it is supported by "substantial evidence," that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal citations and quotations omitted). The ALJ must build a "'logical bridge' between the evidence and his conclusions." *Id.* We will not uphold an ALJ's decision that mischaracterizes the medical evidence or fails to mention significant evidence that supports the plaintiff's claim. *Golembiewski v. Barnhart*, 322 F.3d 912, 916-17 (7th Cir. 2003); *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## III.

Mr. Krasowski challenges the ALJ's determination on a number of bases: (1) he quarrels with the Step 3 determination that Mr. Krasowski's impairments do not meet or equal a listing; (2) he disputes the ALJ's RFC assessment, and in a related vein, the ALJ's credibility determination regarding Mr. Krasowski and the ALJ's handling of evidence from treating physicians; and (3) he argues that the ALJ erred in the use of the Grid at Step 5. A number of these challenges center on the ALJ's treatment of the medical evidence. For the reasons we explain below, we agree that several significant deficiencies in the ALJ's handling of the medical evidence require a remand.

*First*, the ALJ failed to discuss significant evidence that conflicts with his Step 3 conclusion that Mr. Krasowski's impairment did not meet or equal a listing, and with his RFC determination that Mr. Krasowksi can perform the full range of medium work. The ALJ's opinion does not mention any medical reports after May 2006, and thus omits any discussion of the KT1000 results. Those test results convinced Dr. Romano that Mr. Krasowski had an ACL tear which affected the stability in his left knee and required surgery – which did not occur as a result of economic reasons (R. 182-83). The ALJ also did not mention Dr. Slusarenko's July 20, 2006 entry, which stated that Mr. Krasowski was still experiencing pain and contemplating surgery (R. 205). Instead, the ALJ ended his discussion of Dr. Romano's treatment notes with the May 2006 entry in which Dr. Romano stated that Mr. Krasowski's MRI showed no ACL injury (R. 21).

Moreover, neither the DDS report by Dr. Shah nor the consultative reports by Drs. Kenny and Vincent discuss Mr. Krasowski's torn ACL or any limitations that resulted from it. Thus, we cannot conclude that the ALJ's consideration of those reports reflected his consideration of Mr. Krasowski's torn ACL. There is no evidence in the ALJ's opinion that he gave any consideration

whatsoever to that condition.

*Second*, the ALJ's determination that Mr. Krasowski "does not need an assistive device to ambulate" ignores record evidence to the contrary (R. 24). Within 12 months after the date of Mr. Krasowski's surgery -- the alleged disability onset date -- all medical reports in the record note that he was limping and walking with an assistive device (*See* R. 181-83, 202-03, 206-10). Mr. Krasowski also testified that he used crutches for 6 to 12 months after surgery (*See* R. 187 (approximately 6 months, as reported by state agency doctor); R. 35 (approximately 12 months)), and that he still uses a cane when the pain gets bad (R. 186). Even 21 months after his surgery, the DDS examiner in November 2007 observed Mr. Krasowski using a cane (R. 139), but this fact was not mentioned by the ALJ. In addition, the DDS examiner in February 2008 -- two years after the alleged onset date -- observed that Mr. Krasowski walked with a limp and used a cane when the pain got worse (R. 186-87).

*Third*, the ALJ mischaracterized the medical evidence in the record when he found that Mr. Krasowski was never prescribed pain medication. To the contrary, Mr. Krasowski's company doctor prescribed pain medication soon after his accident (R. 23, 186), and Dr. Romano prescribed Vicodin and other pain medication after his knee surgery (R. 228, 231). Mr. Krasowski stopped using the prescribed medications because they upset his stomach (R. 187). The ALJ should have considered that "negative side effects from medication may excuse failure to pursue treatment." *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009). The ALJ also failed to mention that Dr. Slusarenko provided and prescribed other treatment for Mr. Krasowski's pain, including TENS (R. 202).

*Fourth*, Mr. Krasowki's treating physicians reported a level of pain and restriction that may be inconsistent with the demands of medium work on a day in, day out basis. Absent good reason,

11

the assessment of a treating physician is entitled to controlling weight. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("An ALJ must offer 'good reasons' for discounting the opinion of a treating physician"). To the extent that the ALJ considered the treaters' assessments unsupported by the record, or compatible with the ability to perform medium work, it was incumbent on the ALJ to explain why. *Id.* This, the ALJ failed to do.

Finally, we note that the ALJ found Mr. Krasowski's statements of his limitations "not credible to the extent that they are inconsistent with" the RFC assessment (R. 24). The Seventh Circuit recently criticized this formulation. *See Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012) (remanding case, in part, because of ALJ's improper credibility finding, which found claimant's statements not credible to the extent they were inconsistent with the ALJ's chosen RFC). That criticism is not new. Rather, it is only the latest in a consistent drumbeat of criticism over the past two years to this approach to making credibility determinations, which the Seventh Circuit has dismissed as "meaningless boilerplate." *Parker,* 597 F.3d at 922; *see also Martinez v. Astrue*, 630 F.3d 693, 696-97 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010). On remand, we urge the ALJ to take heed of this Seventh Circuit case law when making any credibility assessments.

## CONCLUSION

For the reasons stated above, this Court grants Mr. Krasowski's motion (doc. # 22), and remands the case for proceedings consistent with this opinion.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATED: April 18, 2012